```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF MISSISSIPPI
                 JACKSON DIVISION


STEVEN TAYLOR                                        PLAINTIFF

VS.                          CIVIL ACTION NO. 3:09CV414TSL-FKB

JOHNSON CONTROLS, INC.                               DEFENDANT
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Johnson Controls, Inc. to dismiss pursuant to Rule 56(c) of the Rules of Civil Procedure. Plaintiff Steven Taylor has responded to the motion, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Plaintiff filed the present action alleging that defendant Johnson Controls, his former employer, retaliated against him for his having engaged in protected activity under the Age Discrimination in Employment Act of 1967, § 4(a), 29 U.S.C.A. § 621, et seq. (ADEA). The complaint additionally sets forth state law claims for breach of contract and intentional infliction of emotional distress. By its motion, Johnson Controls urges that summary judgment is appropriate as to the ADEA claim because, for various reasons, plaintiff cannot sustain his prima facie case of retaliation and because, in any event, he has no proof tending to

show that the stated reason for his termination, a reduction in force, was pretextual.  Additionally, defendant argues that summary judgment is appropriate as to the breach of contract claim because by its "offer of transfer", it did not agree to assign Taylor to the day shift or to allow him overtime pay.  Alternatively, defendant maintains that this claim is barred by a three-year statute of limitations.  Finally, defendant asserts that defendant's conduct in plaintiff's employment dispute was neither extreme nor outrageous so as to support a claim for intentional infliction of emotional distress.  For his part, Taylor maintains that summary judgment is not appropriate as to the retaliation claim or as to the breach of contract claim.  Based on the following, the court concludes that defendant is entitled to summary judgment.

In July 2004, Taylor, a salaried "Product Engineer," employed by defendant since 1999, sought and was approved for a transfer from defendant's Alabama car seat manufacturing plant to its plant in Madison, Mississippi.  Prior to his transfer from the Alabama plant, Taylor had a paygrade of 57, worked on the day shift and was eligible to receive overtime pay.  The transfer offer, dated June 10, 2004, recites that Taylor's position in Madison would be "Product Engineer," that his pay grade would be 57 and that he would be nominated to participate in the "Plant Bonus Plan at 7% Target."  The offer contains nothing regarding eligibility for

overtime pay or plaintiff's assigned shift. The record reflects that on July 15, 2004, a document entitled "Personnel Action Form" was generated by defendant's human resources department which purports to document plaintiff's transfer to the Madison plant. At the bottom of the form, under the heading "Additional Pay Information," a handwritten notation appears: "Transfer to Madison, MS. No other changes."

Upon his transfer to Madison, plaintiff, to his dissatisfaction, was utilized as a "Quality Engineer" rather than as a "Product Engineer,"[1] and pursuant to the Madison plant's policy, he was not eligible to receive overtime pay, although he was eligible for a bonus of up to 7% of salary. In October 2004, Taylor complained to the human resources department about not being utilized as a product engineer, not receiving overtime pay and being assigned to work the night shift.

According to plaintiff, in April 2005, he was reassigned to the day shift, where he typically worked a forty-five hour week and performed the duties of a product engineer. Plaintiff remained on the day shift until September 2006, when his new supervisor, Hattie Long, returned him to the role of a quality engineer and assigned him to the night shift so he could help

---

[1]  Neither party has endeavored to explain to the court the difference between a "Product Engineer" and a "Quality Engineer." Apparently, at least one difference is that a product engineer needs specialized software and a quality engineer does not.

Quality Engineer Johnny Nesmith, a white male in his sixties, cover the night shift after several other engineers had left the company.  Sometime in early November 2006, Long denied Taylor's request for vacation leave.  Long's stated reason for denying the leave was because another employee, Jamie Days, had previously been granted permission to take the day off.  However, according to Taylor, Days was present on the day that he had sought to take off.

In November 2006, Taylor received a less than favorable performance review from Long, to which Taylor responded in rebuttal via email, copying Joe Aresco, Regional Human Resources Manager for Johnson Controls.  In his correspondence to Aresco, he purported to factually refute each instance of poor performance cited by Long.  He also complained that he had not received adequate training for or a proper job description of his role as a quality engineer.  While Taylor further expressed that he felt "targeted for termination," he did not purport to give a reason for this feeling. At his deposition, Taylor attributed the unfavorable review, as well as the denial of vacation leave and his return to the night shift, to the fact that he had defended Nesmith in the face of Long's racial and age-related slurs. According to Taylor, while he and Long initially had a friendly relationship, it soured when he would not "sell Nesmith out" and went so far as to tell Long that he would be a witness for Nesmith

4

if he ever decided to sue Johnson Controls. By January 2007, Nesmith had left Taylor Controls, and in March 2007, he filed an ADEA lawsuit against Johnson Controls. His case settled shortly thereafter, in July 2007.

Meanwhile, on January 17, 2007, Taylor met with Aresco and Bill Mahaffey, who had taken Long's place as Quality Engineer Supervisor, to discuss Long's evaluation. At this meeting, Taylor provided them with proof to refute the evaluation. At the meeting's conclusion, Aresco advised that the negative evaluation would be stripped from Taylor's employment record such that he would start with a clean slate with Mahaffey. Aresco additionally assured Taylor that he would work to have Taylor returned to the role of product engineer or have his pay scale downgraded so that he would be eligible for overtime pay.

During the next year, while Taylor remained on the night shift as quality engineer, he complained to management that during a plant slowdown, he was required to be on the job five days a week, while other salaried employees were required to report four days a week. During this period, he also refused to support the company's opposition to unionization of the non-salaried employees.

In May 2008, Taylor filed a charge with the EEOC, asserting that he had been retaliated against for having opposed age discrimination against a co-worker. Thereafter, in December 2008,

defendant terminated plaintiff and another of its quality engineers, purportedly as part of a reduction-in-force and based on a rating of all the quality engineers performed by Mahaffey. On February 27, 2009, the EEOC issued a right-to-sue letter to plaintiff, and the instant lawsuit was filed on May 28, 2009.

Under the ADEA, an employer may not retaliate against an employee because the employee "has opposed any practice made unlawful by this section" or because he "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). To determine whether summary judgment is appropriate, the court employs the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Initially, Taylor must show that: "1) he engaged in an activity protected by . . .the ADEA; 2) he suffered an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action." Id. "If a plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions." Davis v. Farmers Ins. Exch., No. 09-10729, 2010 WL 1404000, at *3 (5th Cir. April 6, 2010). Should the defendant satisfy this burden, the presumption of discrimination dissipates and plaintiff has the "ultimate burden of proving intentional

discrimination." Id.  As defendant correctly points out, in an ADEA case, the plaintiff must prove that age was the "but-for" cause of the challenged employment action, and may not survive summary judgment by merely demonstrating that a plaintiff's opposition to allegedly discriminatory conduct under the ADEA was a "motivating factor." Id. (citing Gross v. FBL Fin. Servs., Inc., --- U.S. ----, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009) (assuming without deciding that McDonald Douglas framework applied to ADEA claims and holding that ADEA does not authorize mixed-motive age discrimination claim)); Reich v. Schering Plough Corp., No. 09-4228, 2010 WL 4263294 (3rd Cir. Oct. 29, 2010) (applying Gross to ADEA retaliation claim).

With regard to the first and second elements, the parties agree that Taylor's filing of the EEOC charge in May 2008 constitutes protected conduct and that his termination is an adverse employment action.[2]  Plaintiff suggests that the temporal

---

[2] The parties disagree as to whether plaintiff engaged in any other protected conduct and whether he sustained any other adverse employment actions.  According to plaintiff, he also engaged in the protected activity of opposing "Hattie Long making disparaging and racial comments about John Nesmith in front of Plaintiff" by confronting Long about her actions.  Plaintiff also asserts that he suffered three other adverse employment actions as a result of his opposition: (1) his 2006 assignment to the night shift; (2) the fact that he never received overtime compensation after his transfer to the Madison plant; and (3) a negative evaluation from Hattie Long.  Although plaintiff argues he has satisfied the first two elements of his prima facie case with respect to these matters, in his response to defendant's motion, he has not undertaken to demonstrate a causal link between his "opposition" to Long's remarks and these three other allegedly adverse employment actions.  Accordingly, the court finds that he

7

proximity between the filing of his EEOC charge in May 2008 and his termination in December 2008 is sufficient to provide the casual link.  However, the mere fact that Taylor filed an EEOC charge seven months prior to his termination is insufficient to establish the requisite link.  Ajao v. Bed Bath and Beyond, Inc., 2008 WL 345505, at *6 (5th Cir. Feb. 8, 2008) (Title VII retaliation case stating, while close timing may provide plaintiff a causual link, temporal proximity must be "very close") (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (stating that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" and citing cases where a three- or four-month period was insufficient to show causal connection); see also Russell v. Univ. of Tex., 2007 WL

---

has failed to establish a prima facie case with regard to claims predicated on these actions.

    The court notes that in the context of his arguments regarding causation, plaintiff asserts that he "complained to Joe Aresco and Bill Mahaffey by letter on more than one occasion that he felt that he was being 'retaliated' against and 'targeted' for termination."  This argument would not appear to bear on the issue of whether there was a causal link but rather whether this constituted protected activity; yet plaintiff does not purport to have complained in these letters that he was being retaliated against by Long for opposing what he perceived as Long's discriminatory conduct.  Rather, the letters/e-mails to Mahaffey and Aresco merely reflect a personality disagreement between plaintiff and Long and contain no references to Nesmith or to Long's allegedly discriminatory conduct toward him.

1879157, at *9 (5th Cir. June 28, 2007) (holding "evidence of temporal proximity alone cannot sustain an inference of causation when there is a six-month gap between the protected activity and the alleged adverse employment action"). As plaintiff has failed to establish a prima facie case of ADEA retaliation, defendant's motion for summary judgment as to this claim will be granted.

Plaintiff claims that Johnson Controls breached its contract with him by failing to provide him with the same compensation scheme that he enjoyed while employed in Alabama, and specifically by denying him the opportunity to earn overtime. For its part, defendant maintains (and plaintiff does not dispute), that even assuming for the sake of argument that a provision for overtime compensation was part of the parties' agreement, the claim is barred by the three-year statute of limitations. The court agrees. As is established by plaintiff's deposition testimony, upon his transfer to the Madison plant in July 2004, Taylor knew that defendant would no longer provide him with overtime compensation. Accordingly, his state law claim for breach of his employment agreement accrued at that time such that his May 2009 claim is untimely. See Levens v. Campbell, 733 So. 2d 753, 759 (Miss. 1999) (holding three-year statute of limitations set forth in Miss. Code Ann. § 15-1-49 applicable to claim for breach of written employment agreement); CitiFinancial Mortg. Co., Inc. v. Washington, 967 So.2d 16, 19 (Miss. 2007) ("In a contractual

claim, a cause of action accrues on the date of actual injury, the date the facts occurred which enable the Plaintiffs to bring a cause of action."). Summary judgment is, thus, appropriate as to this claim.

Finally, inasmuch as plaintiff has put forth no argument in opposition to defendant's well-reasoned and well-supported argument that summary judgment is appropriate as to plaintiff's intentional infliction of emotional distress claim, summary judgment will be entered as to this claim as well.

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this the 11th day of January, 2011.

_/s/ Tom S. Lee_____
UNITED STATES DISTRICT JUDGE